## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| SOUTHLAND ROYALTY COMPANY LLC, | ) | Case No. 20-10158 (KBO) |
| | ) | |
| Debtor.[1] | ) | **Ref. Docket Nos. 23, 24, 34 & 51** |

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO
(A) OBTAIN POSTPETITION FINANCING AND (B) USE CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO PREPETITION RBL SECURED
PARTIES, (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (IV)
MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

Upon the motion, dated January 27, 2020 (the "***Motion***"), of the debtor and debtor-in-possession (the "***Debtor***"), in the above-referenced chapter 11 case (the "***Chapter 11 Case***"), seeking entry of an interim order, which was entered by the Court on January 30, 2020 [D.I. 51] (the "***Interim Order***") and this final order (this "***Final Order***") pursuant to sections 105(a), 107, 361, 362, 363, 364, 503, 507 and 552 of chapter 11 of title 11 of the United States Code (as amended, the "***Bankruptcy Code***"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rules 2002-1, 4001-1, 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***") that, among other things:

(i)    authorizes Southland Royalty Company LLC, a Delaware limited liability company designated as the "Borrower" under, and as defined in, the DIP Credit Agreement (defined below) to obtain senior secured priming and superpriority postpetition financing consisting of a new money revolving credit facility of up to $35,000,000 (the "***DIP Revolver Facility***," and together

---

[1] The last four digits of the Debtor's United States federal tax identification number are 8522. The Debtor's mailing address is 400 West 7th Street, Fort Worth, Texas 76102.

with the Roll-Up (defined below), the "***DIP Facility***," and the loans extended under the DIP Facility, including the Roll-Up DIP Loans (defined below) the "***DIP Loans***"), pursuant to the terms of (x) this Final Order, (y) that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of February 6, 2020 (as amended by that certain First Amendment to the DIP Credit Agreement set forth as <u>Exhibit A</u> hereto, and as the same may be further amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "***DIP Credit Agreement***"), by and among the Debtor, Citibank, N.A., as administrative agent (in such capacity, the "***DIP Agent***"), Citigroup Global Markets Inc. and Barclays Bank PLC as joint lead arrangers and the other financial institutions that are from time to time party to the DIP Credit Agreement as "Lenders" under, and as defined in, the DIP Credit Agreement (the "***DIP Lenders***," together with the DIP Agent, and the other Secured Parties (as such term is defined in the DIP Credit Agreement) and any other party to which DIP Obligations (defined below) are owed, the "***DIP Secured Parties***"), and (z) any and all other Loan Documents (as defined in the DIP Credit Agreement, and together with the DIP Credit Agreement, the "***DIP Loan Documents***") and to use the DIP Facility, along with cash collateral, to: (A) pay transaction costs, fees and expenses related to the DIP Facility; (B) provide working capital and funding for other general corporate purposes of the Debtor in accordance with the Approved Budget (as defined below); (C) make adequate protection payments as authorized by the United States Bankruptcy Court for the District of Delaware (this "***Court***") in the Interim Order or this Final Order, as applicable; (D) pay obligations arising from or related to the Carve Out; (E) pay restructuring costs incurred in connection with the Chapter 11 Case; and (F) convert $35,000,000 of the outstanding principal amount of the revolving loans under the Prepetition RBL Credit Agreement (defined below) (the "***Prepetition RBL Revolving Loans***") held by the DIP Lenders as of the Petition Date (defined below) to DIP

2

Obligations under the DIP Loan Documents, ratably in accordance with the DIP Lenders' respective shares of the DIP Revolver Facility (the "**Roll-Up**," and such converted Prepetition RBL Revolving Loans, the "**Roll-Up DIP Loans**");

(ii)     approves the terms of, and authorizes the Debtor to execute and deliver, and perform under, the DIP Loan Documents and authorizes and directs the Debtor to perform such other and further acts as may be required in connection with the DIP Loan Documents and this Final Order, including performance under any indemnification thereunder and performance under any related fee letter or commitment letter;

(iii)     subject to the Carve Out, grants (x) to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, Liens (as defined in the DIP Credit Agreement) on all of the DIP Collateral (defined below) pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, which Liens shall be senior to the Primed Liens (defined below) and the Prepetition RBL Adequate Protection Liens (defined below), and shall be junior solely to any valid, enforceable, and non-avoidable Liens that are (A) in existence on the Petition Date, (B) either perfected as of the Petition Date or perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code, and (C) senior in priority to the Prepetition RBL Liens (defined below; all such Liens, collectively, the "**Prepetition Prior Liens**") and (y) to the DIP Secured Parties, pursuant to section 364(c)(1) of the Bankruptcy Code, superpriority administrative claims having recourse to all prepetition and postpetition property of the Debtor's estate, now owned or hereafter acquired and the proceeds of each of the foregoing, including the Debtor's rights under section 549 of the Bankruptcy Code and the proceeds thereof, and the proceeds of Avoidance Actions (defined below);

(iv)    authorizes the Debtor to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "***Cash Collateral***"), including Cash Collateral in which the DIP Secured Parties and/or the Prepetition RBL Secured Parties (defined below) have a Lien or other interest, in each case whether existing on the Petition Date, arising pursuant to the Interim Order or this Final Order or otherwise;

(v)    modifies the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order;

(vi)    authorizes the Debtor to borrow under the DIP Revolver Facility in an aggregate outstanding principal amount that will not exceed $35,000,000; *provided* that any New Money Advance (as defined in the DIP Credit Agreement) repaid under the DIP Revolver Facility may be reborrowed, subject to the terms of the DIP Loan Documents and this Final Order;

(vii)    subject to the Carve Out, solely to the extent of any diminution in the value of their collateral, grants the Prepetition RBL Secured Parties, as of the Petition Date and in accordance with the relative priorities set forth herein, the Prepetition RBL Adequate Protection (defined below), which consists of, among other things, Prepetition RBL Adequate Protection Liens (defined below) and Prepetition RBL Adequate Protection Superpriority Claims (defined below);

(viii)    waives the Debtor's right to surcharge collateral pursuant to section 506(c) of the Bankruptcy Code;

(ix)    provides that the DIP Secured Parties and the Prepetition RBL Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and that the "equities of the case" exception shall not apply; and

4

(x)      provides for the immediate effectiveness of this Final Order and waives any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

Having considered the Motion, the DIP Credit Agreement, the objections to the Motion, the *Declaration of Frank A. Pometti in Support of Voluntary Petition, First Day Motions and Applications* (the "**First Day Declaration**"), the *Declaration of Avi Robbins in Support of the Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition RBL Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* and the evidence submitted or proffered at the hearing held on January 29, 2020 to consider entry of the Interim Order (the "**Interim Hearing**") and the hearing held on February 26, 2020 to consider entry of this Final Order (the "**Final Hearing**"); and in accordance with Bankruptcy Rules 2002, 4001(b), 4001(c), 4001(d), and 9014, and all applicable Local Rules, notice of the Motion and the Final Hearing having been provided pursuant to Bankruptcy Rule 4001; the Interim Hearing and the Final Hearing each having been held and concluded; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtor, its creditors, its estate and all parties in interest, and is essential for the continued operation of the Debtor's business and the preservation of the value of the Debtor's assets; and it appearing that the Debtor's entry into the DIP Loan Documents is a sound and prudent exercise of the Debtor's business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

THIS COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]

A.  **Petition Date**. On January 27, 2020 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court. The Debtor has continued in the management and operation of its business and properties as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. An Official Committee of Unsecured Creditors (the "***Committee***") was appointed on February 10, 2020. No trustee, or examiner has been appointed in the Chapter 11 Case.

B.  **Jurisdiction and Venue**. This Court has core jurisdiction over the Chapter 11 Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Chapter 11 Case and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and other predicates for the relief sought herein are sections 105(a), 107, 361, 362, 363, 364, 503, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014 and Local Rules 2002-1, 4001-1, 4001-2 and 9013-1.

C.  **Notice**. The Final Hearing was held pursuant to the authorization of Bankruptcy Rule 4001. Notice of the Final Hearing has been provided by the Debtor, whether by mail, facsimile, electronic mail, overnight courier or hand delivery, to certain parties in interest, including: (a) the Office of the United States Trustee for the District of Delaware (the "***United States Trustee***"); (b) counsel to the Committee; (c) the DIP Agent and counsel thereto; (d) the Prepetition RBL Agent and counsel thereto; (e) the United States Attorney's Office for the District

---

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, to the extent appropriate, pursuant to Bankruptcy Rule 7052.

of Delaware; (f) the Internal Revenue Service; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, such notice of the Motion, the relief requested therein and the Final Hearing complies with Bankruptcy Rule 4001 and the Local Rules.

D.    **Debtor's Stipulations Regarding the Prepetition RBL Facility**. Subject only to the rights of parties in interest that are specifically set forth in Paragraph 5 below, the Debtor, on its own behalf and on behalf of its estate, admits, stipulates, acknowledges, and agrees (Paragraph D hereof shall be referred to herein collectively as the "***Debtor's RBL Stipulations***") as follows:

(i)    Prepetition RBL Credit Facility. Pursuant to that certain Credit Agreement, dated as of March 31, 2015 (as amended by Amendment No. 1 to Credit Agreement dated as of April 30, 2015, Amendment No. 2 and Consent to Credit Agreement dated as of June 24, 2016, Amendment No. 3 to Credit Agreement dated as of April 18, 2017, Amendment No. 4 to Credit Agreement dated as of October 5, 2017, Amendment No. 5 to Credit Agreement dated as of November 29, 2017, Amendment No. 6 to Credit Agreement dated as of December 13, 2017, Amendment No. 7 to Credit Agreement dated as of February 19, 2018, Amendment No. 8 to Credit Agreement dated as of November 30, 2018, and Amendment No. 9 to Credit Agreement dated as of June 28, 2019, the "***Prepetition RBL Credit Agreement***," and collectively with any other agreements and documents executed or delivered in connection therewith, including the "Loan Documents" as defined therein, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "***Prepetition RBL Loan Documents***") among (a) Southland Royalty Company LLC, as Borrower (defined therein), (b) the lenders from time to time party thereto (collectively, the "***Prepetition RBL Lenders***"), (c) Citibank, N.A., as administrative agent (in such capacity, the "***Prepetition RBL Agent***"), and (d) Citigroup Global Markets Inc., BMO

Harris Bank N.A., Barclays Bank PLC, Capital One, National Association, and UBS Securities LLC as Joint Lead Arrangers (collectively with (i) the Prepetition RBL Lenders, (ii) the Prepetition RBL Agent, (iii) any Prepetition RBL Lender or affiliate thereof that was party on or prior to the Petition Date with the Debtor to a Hedge Contract or any Gas Sales Contract (each as defined in the Prepetition RBL Credit Agreement), and (iv) all other Secured Parties (as defined in the Prepetition RBL Credit Agreement), the "***Prepetition RBL Secured Parties***"), the Prepetition RBL Secured Parties agreed to extend loans and other financial accommodations to the Debtor pursuant to the Prepetition RBL Loan Documents. All obligations of the Debtor arising under the Prepetition RBL Credit Agreement (including the "Obligations" as defined therein, whether or not arising under the Prepetition RBL Loan Documents) or the other Prepetition RBL Loan Documents shall collectively be referred to herein as the "***Prepetition RBL Obligations***."

(ii)      <u>Prepetition RBL Liens and Prepetition RBL Collateral</u>.  Pursuant to the Security Instruments (as defined in the Prepetition RBL Credit Agreement and as such documents were amended, restated, supplemented, or otherwise modified from time to time, the "***Prepetition RBL Collateral Documents***"), by and among the Debtor and the Prepetition RBL Agent, the Debtor granted to the Prepetition RBL Agent, for the benefit of the Prepetition RBL Agent and the other Prepetition RBL Secured Parties, to secure the Prepetition RBL Obligations, a first-priority security interest in and continuing Lien (the "***Prepetition RBL Liens***") on substantially all of the Debtor's assets and properties (which, for the avoidance of doubt, includes Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising. All "Collateral" as defined in the Prepetition RBL Credit Agreement granted or pledged by the Debtor pursuant to any Prepetition RBL Collateral Document or any other Prepetition RBL Loan Document shall collectively be

8

referred to herein as the "***Prepetition RBL Collateral***." As of the Petition Date, (a) the Prepetition RBL Liens (I) are legal, valid, binding, enforceable, and perfected Liens, (II) were granted to, or for the benefit of, the Prepetition RBL Secured Parties for fair consideration and reasonably equivalent value, (III) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein), and (IV) are subject and subordinate only to (A) the DIP Liens (defined below), (B) the Carve Out (defined below), (C) the Prepetition RBL Adequate Protection Liens (defined below), and (D) the Prepetition Prior Liens, and (b) (I) the Prepetition RBL Obligations constitute legal, valid, and binding obligations of the Loan Parties (as such term is defined in the Prepetition RBL Credit Agreement), enforceable in accordance with the terms of the applicable Prepetition RBL Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (II) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Prepetition RBL Obligations exist, and (III) no portion of the Prepetition RBL Obligations or any payments made to any or all of the Prepetition RBL Secured Parties are subject to avoidance, disallowance, disgorgement, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iii)    Amounts Owed under Prepetition RBL Loan Documents. As of the Petition Date, the Debtor owed the Prepetition RBL Secured Parties, pursuant to the Prepetition RBL Loan Documents, without defense, counterclaim, reduction or offset of any kind, in respect of loans and other financial accommodations made by the Prepetition RBL Secured Parties, an aggregate principal amount of approximately $540 million, *plus* all accrued and hereafter accruing and unpaid interest thereon, *plus* any additional fees, expenses (including any reasonable and

documented attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition RBL Loan Documents) and other amounts now or hereafter due under the Prepetition RBL Loan Documents (including any unpaid Lender Hedging Obligations (as defined in the Prepetition RBL Credit Agreement)), *less* any payments applied, or to be applied, thereto in accordance with Paragraph 18 of the Interim Order or this Final Order.

(iv) <u>Release of Claims</u>. Subject to Paragraph 5 below, the Debtor and its estate shall be deemed to have forever waived, discharged, and released each of the Prepetition RBL Secured Parties and their respective affiliates, assigns, or successors and the respective members, managers, equity holders, affiliates, agents, attorneys, financial advisors, consultants, officers, directors, employees, and other representatives of the foregoing (all of the foregoing, collectively, the "***Prepetition RBL Secured Party Releasees***") from any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action (including causes of action in the nature of "lender liability"), defenses, setoff, recoupment, other offset rights, and other rights of disgorgement or recovery against any and all of the Prepetition RBL Secured Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the Prepetition RBL Obligations, the Prepetition RBL Liens, or the debtor- creditor relationship between any of the Prepetition RBL Secured Parties, on the one hand, and the Debtor, on the other hand, including (a) any recharacterization, subordination, avoidance, disallowance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law, or municipal law and (b) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition RBL Obligations or any payments or other transfers made on account of the Prepetition RBL Obligations, or the validity,

enforceability, priority, or non-avoidability of the Prepetition RBL Liens securing the Prepetition RBL Obligations, including any right or basis to seek any disgorgement or recovery of payments of cash or any other distributions or transfers previously received by any of the Prepetition RBL Secured Party Releasees.

(v)     **Cash Collateral**. All of the cash of the Debtor, including any cash in deposit accounts of the Debtor, wherever located, that constitutes Prepetition RBL Collateral is Cash Collateral of the Prepetition RBL Agent and the other Prepetition RBL Secured Parties.

E.     **Reserved**.

F.     **Findings Regarding the DIP Facility**.

(i)     <u>Need for Postpetition Financing</u>. The Debtor needs continued access to the DIP Facility and the use of Cash Collateral to, among other things, permit the orderly continuation of the operation of its business, to maintain business relationships with vendors, suppliers, and customers, to satisfy other working capital and operational needs, and to otherwise preserve the value of the Debtor's estate. The Debtor's access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facility is vital to a successful reorganization and/or to otherwise preserve the value of the Debtor's estate.

(ii)     <u>No Credit Available on More Favorable Terms</u>. The Debtor has been and continues to be unable to obtain financing on more favorable terms from sources other than the DIP Secured Parties under the DIP Loan Documents and this Final Order. The Debtor is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured credit allowable only under sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code. The Debtor is unable to obtain secured credit under section 364(d)(1) of the Bankruptcy Code without (a) granting to the DIP Secured Parties the rights,

11

remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including the DIP Liens and the DIP Superpriority Claims (defined below), (b) allowing the DIP Secured Parties to provide the loans and other financial accommodations under the DIP Facility (including the Roll-Up DIP Loans) on the terms set forth herein and in the DIP Loan Documents, and (c) granting to the Prepetition RBL Secured Parties the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including the Prepetition RBL Adequate Protection and the conversion of certain Prepetition RBL Obligations into the Roll-Up, (the foregoing described in clauses (a), (b) and (c), collectively, the ***DIP Protections***").

G. **Financing**. The DIP Secured Parties and, as applicable, the Prepetition RBL Secured Parties are willing to provide financing to the Debtor and/or consent to the use of Cash Collateral by the Debtor, subject to (i) the entry of this Final Order and (ii) the terms and conditions of the DIP Loan Documents.

H. **Adequate Protection**. The Prepetition RBL Secured Parties have agreed to permit the Debtor's continued use of the Prepetition RBL Collateral, including the Cash Collateral, subject to the terms and conditions set forth herein, including the protections afforded a party acting in "good faith" under section 364(e) of the Bankruptcy Code. In addition, the DIP Facility contemplated hereby provides for a priming of the Primed Liens pursuant to section 364(d) of the Bankruptcy Code. The Prepetition RBL Secured Parties are entitled to the adequate protection as set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code. Based on the Motion and on the record presented to this Court at the Interim Hearing and the Final Hearing, the proposed adequate protection arrangements, use of the Cash Collateral, and extensions of credit under the DIP Facility contemplated hereby are fair and reasonable, reflect the Debtor's prudent exercise of business judgment consistent with its fiduciary duties, and constitute reasonably

12

equivalent value and fair consideration for the consent of the Prepetition RBL Secured Parties to the DIP Facility and the use of Cash Collateral. The Prepetition RBL Secured Parties consent to the relief set forth herein, pursuant to the terms of the Prepetition RBL Loan Documents, and the prepetition Liens and security interests of such parties are adequately protected pursuant to the terms of this Final Order. Notwithstanding anything to the contrary herein, the consent of the Prepetition RBL Secured Parties to the DIP Facility and to the priming of the Prepetition RBL Liens by the DIP Liens is expressly limited to the present DIP Facility and the DIP Liens securing same and shall not be applicable to any other debtor-in-possession credit facility, even if it contains substantially the same economic terms as this DIP Facility.

I.       **Section 552**. In light of the subordination of their Liens and superpriority administrative claims to (i) the Carve Out, in the case of the DIP Secured Parties, and (ii) the Carve Out and the DIP Liens, in the case of the Prepetition RBL Secured Parties, each of the DIP Secured Parties and the Prepetition RBL Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

J.       **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)       The DIP Secured Parties have indicated a willingness to provide postpetition secured financing via the DIP Facility to the Debtor in accordance with the DIP Loan Documents and this Final Order.

(ii)       The DIP Secured Parties, the Prepetition RBL Secured Parties and the Debtor, with the assistance and counsel of their respective advisors, have acted in good faith and at arm's-length in, as applicable, negotiating, consenting to, and/or agreeing to, the DIP Facility (including the Roll-Up), the Debtor's use of the DIP Collateral and the Prepetition RBL Collateral (including, in each case, any Cash Collateral), the DIP Loan Documents, and the DIP

13

Protections. The DIP Obligations (including all advances that are made at any time to the Debtor under the DIP Loan Documents and the Roll-Up DIP Loans) and the Debtor's use of the DIP Collateral and the Prepetition RBL Collateral (including Cash Collateral) shall be deemed to have been extended and/or consented to by the DIP Secured Parties and the Prepetition RBL Secured Parties, as applicable, for valid business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express and good faith reliance upon the protections offered by section 364(e) of the Bankruptcy Code and this Final Order, and, accordingly, the DIP Liens, the DIP Superpriority Claims, and the DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and this Final Order in the event this Final Order or any other order or any provision hereof or thereof is vacated, reversed, amended, or modified on appeal.

K. **Relief Essential; Best Interest**. Absent the relief set forth in this Final Order, the Debtor's estate, its business and properties, and its ability to successfully reorganize or otherwise preserve the enterprise value of the Debtor's estate will be irreparably harmed. Consummation of the DIP Facility and authorization of the use of Cash Collateral in accordance with this Final Order and the DIP Loan Documents are therefore in the best interests of the Debtor's estate and consistent with the Debtor's fiduciary duties. Based on all of the foregoing, sufficient cause exists for entry of this Final Order.

NOW, THEREFORE, based on the Motion and the record before this Court with respect to the Motion, and with the consent of the Debtor, the Prepetition RBL Agent, the requisite Prepetition RBL Secured Parties (on behalf of all of the Prepetition RBL Secured Parties), and the DIP Agent (on behalf of the DIP Secured Parties) to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      **Motion Granted**. The Motion is hereby granted in accordance with the terms and conditions set forth in this Final Order and the DIP Loan Documents. Any objections to the entry of this Final Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.      **DIP Loan Documents and DIP Protections**.

(a)      Approval of DIP Loan Documents. The Debtor is expressly authorized to continue to perform under the DIP Loan Documents (including with respect to any indemnification obligations thereunder and any related fee letter or commitment letter) and this Final Order, to incur the DIP Obligations (defined below) (including to convert to DIP Obligations under the DIP Loan Documents each DIP Lender's ratable share of $35,000,000 of the outstanding principal amount of the Prepetition RBL Obligations (with each DIP Lender's ratable share based on the ratio of such DIP Lender's share of the DIP Revolver Facility)), in accordance with, and subject to, the terms of this Final Order and the DIP Loan Documents, and to execute, deliver, and perform under all other instruments, certificates, agreements, and documents that may be required or necessary for the performance by the Debtor under the DIP Loan Documents and the creation and perfection of the DIP Liens described in, and provided for, by this Final Order and the DIP Loan Documents. The Debtor is hereby authorized to do and perform all acts and pay the principal, interest, fees, expenses, and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this Final Order, including all closing fees, administrative fees, commitment and arrangement fees, and reasonable and documented attorneys', financial advisors', and accountants' fees, and disbursements arising under the DIP Loan Documents, the Interim Order and this Final Order, which amounts shall not be subject to

15

further approval of this Court and shall be non-refundable and not subject to challenge in any respect; *provided* that the payment of the fees and expenses of the Lender Professionals (defined below) shall be subject to the provisions of Paragraph 20(b). Upon their execution and delivery, the DIP Loan Documents shall represent the legal, valid, and binding obligations of the Debtor enforceable against the Debtor in accordance with their terms. Each officer of the Debtor is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive evidence of such officer's respective authority to act in the name of and on behalf of the Debtor.

(b)    <u>DIP Obligations</u>. For purposes of this Final Order, the term "***DIP Obligations***" shall mean all amounts and other obligations and liabilities owing by the Debtor under the DIP Credit Agreement and other DIP Loan Documents (which includes all "Obligations," as defined in the DIP Credit Agreement), including the Roll-Up DIP Obligations (defined below), and shall include the principal of, interest on, and fees, costs, expenses, premiums, and other charges owing in respect of, such amounts (including any reasonable and documented attorneys', accountants', financial advisors', and other fees, costs, and expenses that are chargeable or reimbursable under the DIP Loan Documents and/or this Final Order), and any obligations in respect of indemnity claims, whether contingent or otherwise. Notwithstanding anything to the contrary herein, the relative rights and priorities of the DIP Secured Parties in respect of the DIP Collateral shall be as provided in this Final Order and the other DIP Loan Documents.

(c)    <u>Authorization to Continue to Incur DIP Obligations and Use Cash Collateral</u>. To enable the Debtor to continue to operate its business and preserve and maximize the value of its estate, during the period from the entry of this Final Order through the Termination Declaration Date (defined below), in each case unless extended by written agreement of the DIP

Agent (acting at the direction of the Majority Lenders (as defined in the DIP Credit Agreement, the "***Required DIP Lenders***")) and the Prepetition RBL Agent, the Debtor is hereby authorized to borrow under the DIP Facility and to use Cash Collateral; *provided* that (I) any amounts repaid under the DIP Revolver Facility may be reborrowed, subject to the terms of the DIP Loan Documents and this Final Order, and (II) any proposed use of the proceeds of DIP Loans or use of Cash Collateral shall be consistent with the terms and conditions of this Final Order and the DIP Loan Documents, including the Approved Budget (defined below) and the Budget Covenants (defined below), subject to any applicable Permitted Variances (as defined and contained in the DIP Credit Agreement).

(d)     Roll-Up. Subject to Paragraph 5 of this Final Order and the Carve Out, each DIP Lender's ratable share of $35,000,000 of the outstanding principal amount of the Prepetition RBL Revolving Loans (with each DIP Lender's ratable share based on the ratio of such DIP Lender's share of the DIP Revolver Facility) shall immediately, automatically, and irrevocably be deemed to have been converted into Roll-Up DIP Obligations and, except as otherwise provided in this Final Order and the DIP Loan Documents, shall be entitled to all the priorities, privileges, rights, and other benefits afforded to the other DIP Obligations. The conversion of the Roll-Up DIP Obligations shall be authorized as compensation for, in consideration for, as a necessary inducement for, and on account of the agreement of the DIP Lenders to fund amounts under the DIP Revolver Facility and not as payments under, adequate protection for, or otherwise on account of, any Prepetition RBL Obligations. The DIP Agent and the DIP Lenders would not be willing to provide the DIP Revolver Facility or extend credit to the Debtor thereunder without the inclusion of the Roll-Up within the DIP Facility. Subject to the terms of the DIP Credit Agreement, the full amount of the Roll-Up DIP Obligations will be required to be repaid in cash on the Maturity Date

17

(as defined in the DIP Credit Agreement). As used herein, the term "***Roll-Up DIP Obligations***" shall mean the Roll-Up DIP Loans and all interest accrued and accruing thereon and all other amounts owing by the Debtor in respect thereof.

(e)     <u>Budget</u>. Attached hereto as Schedule 1 is a rolling 13-week cash flow budget (the "***Initial Approved Budget***") that reflects on a line-item basis the Debtor's (i) weekly projected cash receipts, (ii) weekly projected disbursements, including professional fees, debt service and any non-recurring or other disbursements, (iii) the sum of weekly unused availability under the DIP Facility plus unrestricted cash on hand (collectively, "***Aggregate Liquidity***") and (iv) the weekly outstanding principal balance of the loans made under the DIP Facility (including the principal amount of the Roll-Up from and after the entry of a Final Order). Commencing under the Interim Order on February 7, 2020 (the "***Initial Reporting Date***") and continuing on the last Friday of each four-week period occurring thereafter (*i.e.,* every four weeks) (each, a "***Subsequent Reporting Date***" and, each such Subsequent Reporting Date together with the Initial Reporting Date, a "***Reporting Date***"), the Debtor shall prepare and deliver to the DIP Agent and counsel to the Committee an updated "rolling" 13-week budget (a "***Proposed Supplemental Budget***"), which shall be in form and substance reasonably satisfactory to the DIP Agent, and which, once approved in writing by the DIP Agent shall supplement and replace the Initial Approved Budget or Supplemental Approved Budget (defined below), as applicable, then in effect (each such updated budget that has been approved in writing by the DIP Agent (a "***Supplemental Approved Budget***") without further notice, motion, or application to, order of, or hearing before, this Court; *provided* that the DIP Agent shall have five (5) Business Days (as defined in the DIP Credit Agreement) to approve each Proposed Supplemental Budget; *provided, further* that unless and until the DIP Agent has approved in writing such Proposed Supplemental Budget or any other proposed

18

modification to the Initial Approved Budget or any Supplemental Approved Budget, as applicable, then in effect, the Debtor shall still be subject to and be governed by the terms of the Initial Approved Budget or Supplemental Approved Budget, as applicable, then in effect in accordance with this Final Order, and the DIP Secured Parties and the Prepetition RBL Secured Parties shall, as applicable, have no obligation to fund under any such Proposed Supplemental Budget or otherwise fund or permit the use of Cash Collateral for any amounts not otherwise provided for in the Initial Approved Budget or Supplemental Approved Budget then in effect. The Initial Approved Budget, as modified by all Supplemental Approved Budgets, shall constitute the "***Approved Budget***."

Notwithstanding anything to the contrary in this Final Order, the professional fees, costs, and expenses of the DIP Agent's advisors and the Prepetition RBL Agent's advisors, respectively, shall be due, payable, and paid in accordance with the terms of this Final Order notwithstanding any budgeted amounts for such fees, costs, and expenses set forth in the Approved Budget, and the Debtor shall not be deemed to have breached the terms of the Approved Budget or the Budget Covenants to the extent the actual amount of such fees, costs, and expenses exceed the applicable budgeted amounts as set forth in the Approved Budget.

(f)    <u>Budget Covenants</u>. The Debtor shall only expend Cash Collateral and other DIP Collateral proceeds in accordance with the Approved Budget, subject to the Permitted Variances, which shall be tested on (i) the first Friday (or, if such Friday is not a Business Day, the immediately preceding Business Day) following each Reporting Date (each such Friday or the immediately preceding Business Day, as applicable, a "***Testing Date***") and (ii) the third Friday (or, if such Friday is not a Business Day, the immediately preceding Business Day) following each Reporting Date (each such Friday or the immediately preceding Business Day, an "***Alternative***

*Testing Date*" and, together with each Testing Date, a "*Variance Testing Date*") (in each case, testing as of the most recent Variance Testing Date for the immediately preceding four-week period then ended (each such period, a "*Testing Period*," and each such report, a "*Variance Report*")). On or before 5:00 p.m. (prevailing Eastern Time) on each Variance Testing Date, the Debtor shall prepare and deliver simultaneously to the DIP Agent, counsel to the Prepetition RBL Agent and counsel to any Committee, a Variance Report, in form and substance reasonably satisfactory to the DIP Agent, setting forth on a line-item basis (i) the actual cash receipts, expenditures, disbursements, and outstanding revolving loan balance (separating out the amount of the Roll-Up) of the Debtor for the applicable Testing Period and the Aggregate Liquidity as of the end of the applicable Testing Period, and (ii) the variance in dollar amounts and percentage (whether positive or negative) of the actual cash receipts, expenditures, disbursements, and outstanding revolving loan balance for the applicable Testing Period, and the actual Aggregate Liquidity as of the end of the applicable Testing Period, from those budgeted amounts for, or as applicable, as of the end of, the corresponding period reflected in the Approved Budget. Pursuant to the DIP Credit Agreement, as of any Variance Testing Date, for the Testing Period ending on such Variance Testing Date, the Debtor shall not allow the aggregate operating disbursements made by the Debtor during such Testing Period (excluding disbursements in respect of (x) professional fees incurred in the Chapter 11 Case by the Debtor, any Committee, the DIP Agent, and the Prepetition RBL Agent, or (y) debt service during such Testing Period) to be greater than 115% of the aggregate disbursements for the Debtor set forth in the Approved Budget for such Testing Period, *provided* that the Debtor may carry forward budgeted but unused disbursements in such Testing Period to the next Testing Period. Nothing in the Approved Budget or the covenants contained in this Paragraph 2(f) or the DIP Credit Agreement shall limit the

20

Debtor's expenditures to (i) the Professional Persons (defined below) retained in the Chapter 11 Case or (ii) the Clerk of Court and Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a). Additional variances, if any, from any Approved Budget, and any proposed changes to any Approved Budget, shall be subject to the written consent of the DIP Agent and the Prepetition RBL Agent (such consent not to be unreasonably conditioned, delayed, or withheld) with notice to counsel to the Committee. The foregoing budget-related covenants are collectively referred to herein as the "***Budget Covenants***."

(g)     <u>Interest, Fees, Costs, Indemnities, and Expenses</u>. The DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Final Order and the DIP Loan Documents, in each case without further notice, motion, or application to, order of, or hearing before, this Court. The Debtor shall pay all fees, costs, indemnities, expenses (including reasonable and documented out-of-pocket legal and other professional fees and expenses of the DIP Agent and performance under any fee letter or commitment letter), and other charges payable under the terms of the DIP Loan Documents as and when due thereunder. All such fees, costs, indemnities, expenses, and disbursements, whether incurred, paid or required to be paid prepetition or postpetition and whether or not budgeted in the Approved Budget, are hereby affirmed, ratified, authorized, and payable (and any funds held by the DIP Agent and/or its professionals as of the Petition Date for payment of such fees, costs, indemnities, expenses, and disbursements may be applied for payment) as contemplated in this Final Order and the DIP Loan Documents, and, subject to the provisions of Paragraph 20(b) with respect to the fees and expenses of the Lender Professionals, shall be non-refundable and not subject to challenge in any respect and shall be payable without need to obtain further Court approval.

(h)    <u>Use of DIP Facility and Proceeds of DIP Collateral</u>. The Debtor shall apply the proceeds of all DIP Collateral solely in accordance with this Final Order, the DIP Loan Documents, and the Approved Budget (subject to any applicable Permitted Variances). Without limiting the foregoing, the Debtor shall not be permitted to make any payments (from the DIP Collateral, the proceeds of DIP Loans, or otherwise) on account of any prepetition debt or obligation prior to the effective date of a confirmed chapter 11 plan, except: (i) as set forth in this Final Order; (ii) as provided in the orders entered by the Court in the Chapter 11 Case (other than this Final Order) pursuant to motions and applications filed by the Debtor within ten (10) days after the Petition Date, which first day orders shall be in form and substance reasonably acceptable to the DIP Agent; (iii) as expressly provided in other motions, orders, and requests for relief; or (iv) as otherwise expressly provided in the DIP Credit Agreement.

(i)    <u>Conditions Precedent</u>. The DIP Secured Parties have no obligation to extend credit under the DIP Facility unless and until all conditions precedent to the extension of credit under the DIP Loan Documents and this Final Order have been satisfied in full or waived in writing by the DIP Secured Parties in accordance with the DIP Loan Documents.

(j)    <u>DIP Liens</u>. Subject to the Carve Out, as security for the DIP Obligations, effective as of the Petition Date, the following security interests and Liens, which shall immediately and without any further action by any Person be valid, binding, permanent, perfected, continuing, enforceable, and non-avoidable as of the date of the entry of the Interim Order, are hereby granted by the Debtor to the DIP Agent, for itself and the other DIP Secured Parties (all such security interests and Liens granted to the DIP Agent for the benefit of all the DIP Secured Parties pursuant to this Final Order and the DIP Loan Documents, the "***DIP Liens***"), on all property of the Debtor, now existing or hereinafter acquired, including all cash and cash equivalents

22

(whether maintained with the DIP Agent or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable (including those owed to the Debtor generated by intercompany transactions), other rights to payment, intercompany loans and other investments, securities and other investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, permits, franchise rights, capital stock and other equity interests of domestic and foreign subsidiaries and in other entities, tax and other refunds, insurance proceeds, claims (including commercial tort claims), causes of action (including the proceeds of Avoidance Actions), and products, offspring, profits, and proceeds relating thereto, rights under section 549 of the Bankruptcy Code (whether received by judgment, settlement, or otherwise), all other Collateral (as defined in the DIP Loan Documents), and all other "property of the estate" (as defined in section 541 of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements, and cash and non-cash proceeds of all of the foregoing, in each case wherever located; *provided* that the Avoidance Actions themselves shall not be DIP Collateral; all of the foregoing collateral collectively (but excluding any assets excluded as collateral under the DIP Loan Documents (if any)), the "***DIP Collateral***"):

> (i)     pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable first priority Lien on and security interest in all DIP Collateral that is either not otherwise subject to a valid, perfected, and non-avoidable security interest or Lien in existence as of the Petition Date (or a valid and non-avoidable

security interest or Lien that is granted, but not perfected, as of the Petition Date, where such lien is perfected after the Petition Date under section 546(b) of the Bankruptcy Code), including the proceeds of the Debtor's claims and causes of action under sections 502(d), 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state or municipal law (collectively, the "*Avoidance Actions*," which for avoidance of doubt, excludes the Debtor's claims and causes of action under section 549 of the Bankruptcy Code or similar state or municipal law and the proceeds of each of the foregoing), whether received by judgment, settlement, or otherwise;

(ii)     pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable Lien on and security interest in all DIP Collateral that is subject solely to the Prepetition Prior Liens, which DIP Lien shall be junior only to such Prepetition Prior Liens and the Carve Out; and

(iii)     subject to the Carve Out and paragraph 22, pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable first priority, senior priming Lien on and security interest in all other DIP Collateral (including Cash Collateral), which DIP Lien shall be senior to the Prepetition RBL Adequate Protection Liens and senior and priming to (A) the Prepetition RBL Liens, and (B) any Liens that are junior to the Prepetition RBL Liens or the Prepetition RBL Adequate Protection Liens, after giving effect to any intercreditor or subordination agreements (the Liens referenced in clauses (A) and (B), collectively, the "*Primed Liens*") and shall be junior only to the Prepetition Prior Liens and the Carve Out.

(k)     DIP Lien Priority. Notwithstanding anything to the contrary contained in this Final Order or the DIP Loan Documents, for the avoidance of doubt, the DIP Liens granted to the DIP Agent for the benefit of the DIP Secured Parties shall in each and every case be first priority senior Liens that (i) are subject to and subordinate to only to the Prepetition Prior Liens, and to the extent provided in this Final Order, the Carve Out, and (ii) except as provided in the immediately preceding sub-clause (i), are senior to all prepetition and postpetition Liens or other interests of any kind of any other person or entity (including the Primed Liens and the Prepetition

RBL Adequate Protection Liens), whether created voluntarily or involuntarily (including by order of a court).

(l)     Enforceable Obligations. The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the Debtor, which DIP Obligations shall be enforceable against the Debtor, its estate, and any successors thereto (including any trustee or other estate representative in any Successor Case (defined below)), and its creditors and other parties-in-interest, in accordance with their terms. No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Loan Documents, the Interim Order or this Final Order shall be stayed, restrained, voidable, avoidable, disallowable, or recoverable under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, 547, 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, surcharge, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, except, with respect to the Prepetition RBL Adequate Protection Liens (defined below), during the Challenge Period (defined below).  Any actions taken by the Debtor, the DIP Secured Parties or the Prepetition RBL Secured Parties in accordance with the Interim Order shall remain in effect and are hereby ratified by this Final Order.

(m)     Superpriority Administrative Claim Status. In addition to the DIP Liens granted herein, effective as of the entry of the Interim Order, all of the DIP Obligations shall constitute allowed superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve Out in

25

accordance with this Final Order, over all administrative expense claims, adequate protection and other diminution claims (including the Prepetition RBL Adequate Protection Superpriority Claims (defined below)), priority and other unsecured claims, and all other claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, to the extent provided by section 364(c)(1) of the Bankruptcy Code, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) to the extent provided in Paragraph 7, 507(a), 507(b), 546, 726, 1113, and 1114 or any other provision of the Bankruptcy Code or otherwise (the "***DIP Superpriority Claims***"). The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and shall be payable from all prepetition and postpetition property of the Debtor and all proceeds thereof, including the proceeds of Avoidance Actions, *provided*, *however*, that notwithstanding anything to the contrary in the Interim Order or this Final Order, the DIP Agent shall satisfy the DIP Superpriority Claims first from assets that were unencumbered as of the Petition Date that do not constitute proceeds of Avoidance Actions before seeking to recover from proceeds of Avoidance Actions.  Other than the Carve Out, or as expressly provided in the DIP Credit Agreement, no costs or expenses of administration, including professional fees allowed and payable under sections 328, 330, or 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Superpriority Claims or the DIP Obligations, or with any other claims of the DIP Secured Parties arising under the DIP Loan Documents and/or this Final Order.

(n)      Priority of DIP Liens and DIP Superpriority Claims. Except as provided herein, and subject to the Carve Out, the DIP Liens and the DIP Superpriority Claims: (i) shall not be subject to sections 506(c), 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (ii) shall not be subordinate to, or *pari passu* with, any Lien that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or otherwise, (iii) shall be valid and enforceable against any trustee or any other estate representative elected or appointed in the Chapter 11 Case, upon the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "***Successor Case***"), and/or upon the dismissal of the Chapter 11 Case, and (iv) notwithstanding anything to the contrary in any First Day Order of this Court in the Chapter 11 Case, shall be senior to any administrative claims arising under any such First Day Order.

3.       **Adequate Protection for Prepetition RBL Secured Parties**. In consideration for the use of the Prepetition RBL Collateral (including Cash Collateral) and the priming of the Prepetition RBL Liens, the Prepetition RBL Agent, for the benefit of the Prepetition RBL Secured Parties, shall receive the following adequate protection (collectively, the "***Prepetition RBL Adequate Protection***"):

(a)      Prepetition RBL Adequate Protection Liens. Subject to the Carve Out, to the extent there is an aggregate diminution in value of the interests of the Prepetition RBL Secured Parties in the Prepetition RBL Collateral (including Cash Collateral) from and after the Petition Date, resulting from the use, sale, or lease by the Debtor of the applicable Prepetition RBL Collateral (including Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the subordination of the Prepetition RBL Liens thereto and to the Carve Out, the

27

imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code, and/or any other reason for which adequate protection may be granted under the Bankruptcy Code ("***Diminution in Prepetition RBL Collateral Value***"), the Prepetition RBL Agent, for the benefit of all the Prepetition RBL Secured Parties, is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement Liens upon all of the DIP Collateral (other than the proceeds of Avoidance Actions) (such adequate protection replacement Liens, the "***Prepetition RBL Adequate Protection Liens***"), which Prepetition RBL Adequate Protection Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Prepetition Prior Liens, and the Carve Out.

(b)    Prepetition RBL Adequate Protection Superpriority Claims. Subject and subordinate to the Carve Out, to the extent of Diminution in Prepetition RBL Collateral Value, the Prepetition RBL Secured Parties are hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the "***Prepetition RBL Adequate Protection Superpriority Claims***"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and priority and other unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, to the extent provided by section 507(b) of the Bankruptcy Code, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (to the extent provided in Paragraph 7), 507(a), 507(b), 546(c), 546(d), 726, 1113, 1114, or any other provision of the Bankruptcy Code or otherwise, junior only to the DIP Superpriority Claims and the Carve Out, and payable from all prepetition and postpetition property of the Debtor and all proceeds thereof (other than the proceeds of Avoidance Actions); *provided* that the Prepetition RBL Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the

Prepetition RBL Adequate Protection Superpriority Claims unless and until all DIP Obligations (including the Roll-Up DIP Obligations) have been Paid in Full. Subject to the relative priorities set forth above and the Challenge set forth in Paragraph 5 below, the Prepetition RBL Adequate Protection Superpriority Claims against the Debtor shall be allowed and enforceable against the Debtor and its estate on a joint and several basis. For purposes of this Final Order, the terms "***Paid in Full***," "***Repaid in Full***," "***Repay in Full***," "***Pay in Full***," and "***Payment in Full***" shall mean, with respect to any referenced DIP Obligations and/or Prepetition RBL Obligations, (i) the indefeasible payment in full in cash of such obligations, (ii) the termination or cash collateralization, in accordance with the DIP Loan Documents or Prepetition RBL Loan Documents, as applicable, of all undrawn letters of credit outstanding thereunder, (iii) the termination of all credit commitments under the DIP Loan Documents and/or Prepetition RBL Loan Documents, as applicable, and (iv) the release of the DIP Secured Parties and the Prepetition Secured Parties, as applicable.

(c)    <u>Priority of Prepetition RBL Adequate Protection Liens and Prepetition RBL Adequate Protection Superpriority Claims</u>. Except as provided herein (including but not limited to Paragraph 5) and subject to the Carve Out, the Prepetition RBL Adequate Protection Liens and the Prepetition RBL Adequate Protection Superpriority Claim (i) shall not be subject to sections 506(c), 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (ii) shall not be subordinate to, or *pari passu* with, any Lien that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or otherwise, and (iii) shall be valid, binding, perfected, and enforceable against any trustee or any other estate representative elected or appointed in the Chapter 11 Case or any Successor Case, and/or upon the dismissal of the Chapter 11 Case.

(d)    <u>Interest and Professional Fees and Expenses of Prepetition RBL Agent</u>. As further adequate protection, and without limiting any rights or defenses of the Prepetition RBL Agent and the other Prepetition RBL Secured Parties under section 506(b) of the Bankruptcy Code, which rights and defenses are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition RBL Secured Parties to the entry of the Interim Order and this Final Order and the Debtor's consensual use of Cash Collateral as provided herein, the Debtor shall pay or reimburse in cash to the Prepetition RBL Agent, any and all fees, costs, expenses, and charges of the Prepetition RBL Agent (including the reasonable and documented fees and expenses of Willkie Farr & Gallagher LLP, Bracewell LLP, Richards, Layton & Finger, P.A. and RPA Advisors as financial advisor), including any unpaid fees, costs, and expenses accrued by the Prepetition RBL Agent prior to or after the Petition Date, (x) within ten (10) Business Days after the presentment of any such invoices to the Debtor with respect to prepetition fees and expenses, and (y) subject to Paragraph 20(b), one Business Day following the deadline for Fee Objections (as defined herein), with respect to any postpetition reimbursement for professional fees.  During the Chapter 11 Case, interest shall, solely to the extent that the Prepetition RBL Obligations are determined by the Court to be oversecured, continue to accrue at the rate set forth in the Prepetition RBL Credit Agreement (including default interest) on the Prepetition RBL Obligations (as such amount is reduced by the Roll-Up DIP Loans).

(e)    The Debtor shall deliver to the Prepetition RBL Agent and counsel to the Committee all information, reports, documents, and other material that the Debtor provides to the DIP Secured Parties pursuant to the DIP Loan Documents.

(f)    Subject to the limitations set forth in Paragraph 12 of this Final Order, notwithstanding the Payment in Full of the DIP Obligations and the termination of the DIP Loan

30

Documents, the covenants set forth in the DIP Loan Documents and any order of this Court relating thereto shall continue in full force and effect for the benefit of the Prepetition RBL Agent and the Prepetition RBL Secured Parties, and may be enforced by the Prepetition RBL Agent. Unless otherwise expressly set forth herein or in the DIP Loan Documents, any consent or approval rights or similar rights granted or referenced in this Final Order or in the DIP Loan Documents in favor of any or all of the DIP Agent, the other DIP Secured Parties, the Prepetition RBL Agent, and the other Prepetition RBL Secured Parties may be exercised (or not exercised) in the sole discretion of such party.

(g)    Consent to Priming and Adequate Protection. The Prepetition RBL Agent, and the other Prepetition RBL Secured Parties that have consented, consent to the Prepetition RBL Adequate Protection and the priming provided for herein; *provided, further* that such consent of the Prepetition RBL Agent and the other Prepetition RBL Secured Parties to the priming of the Prepetition RBL Liens and the use of Cash Collateral is expressly conditioned upon the entry of this Final Order, and such consent shall not be deemed to extend to any other Cash Collateral usage or other replacement financing or debtor-in-possession financing other than the DIP Facility provided under the DIP Loan Documents; *provided, further*, that such consent shall be of no force and effect in the event this Final Order is reversed, modified, stayed, or amended (unless such reversal, modification, stay, or amendment is acceptable to the Prepetition RBL Agent) or the DIP Loan Documents and DIP Facility as set forth herein are not approved.

(h)    Right to Seek Additional Adequate Protection. Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, this Court finds that the adequate protection provided herein is reasonable to protect the interests of the Prepetition RBL Secured Parties. However, the Prepetition RBL Agent, on behalf of the

Prepetition RBL Secured Parties, may request Court approval for additional or alternative adequate protection, without prejudice to any objection of the Debtor or any other party in interest to the grant of any additional or alternative adequate protection; *provided* that any such additional or alternative adequate protection shall at all times be subordinate and junior to the Carve Out and claims and Liens of the DIP Secured Parties granted under this Final Order and the DIP Loan Documents; *provided*, *further*, that nothing in this Paragraph shall authorize the Prepetition RBL Agent or Prepetition RBL Secured Parties to deny the Debtor access to Cash Collateral or DIP Loans in accordance with the Approved Budget, subject to any Permitted Variances, pursuant to the terms of this Final Order. The consent of the Prepetition RBL Secured Parties to the priming of the Prepetition RBL Liens by the DIP Liens and the Debtor's use of Cash Collateral on the terms set forth herein does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition RBL Secured Parties that their respective interests in the Prepetition RBL Collateral are adequately protected pursuant to this Final Order or otherwise.

4.    **Automatic Postpetition Lien Perfection**. This Final Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, and priority of the DIP Liens and the Prepetition RBL Adequate Protection Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, security agreement, pledge agreement, control agreement, or other instrument or document that may otherwise be required under the law of any jurisdiction, obtaining "control" (as defined in any applicable Uniform Commercial Code or other law) over any DIP Collateral (and the DIP Agent and, after Payment in Full of the DIP Facility, the Prepetition RBL Agent shall be deemed, without any further action, to have control over all the Debtor's deposit accounts, securities accounts, and commodities accounts within the meaning

of such Uniform Commercial Code and other law), or (b) taking any other action to validate or perfect the DIP Liens and the Prepetition RBL Adequate Protection Liens or to entitle the DIP Liens and the Prepetition RBL Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agent and each holder of Prepetition RBL Adequate Protection Liens (in the latter case, solely with respect to such Prepetition RBL Adequate Protection Liens) may, each in their sole discretion, enter into and file, as applicable, financing statements, mortgages, security agreements, notices of Liens, and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been entered into, filed, or recorded as of the Petition Date. The Debtor shall execute and deliver to the DIP Agent and/or each holder of Prepetition RBL Adequate Protection Liens, as applicable, all such financing statements, mortgages, notices, and other documents as such parties may reasonably request to evidence and confirm the contemplated validity, perfection, and priority of the DIP Liens and the Prepetition RBL Adequate Protection Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, each of the DIP Agent and each holder of Prepetition RBL Adequate Protection Liens may, in its discretion, file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or other monetary obligations to any governmental entity or non-governmental entity in

order for the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by the Debtor, in favor of the DIP Secured Parties in accordance with the terms of the DIP Loan Documents and this Final Order or in favor of the Prepetition RBL Secured Parties in accordance with this Final Order. To the extent that the Prepetition RBL Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, financing statement, or account control agreements, listed as loss payee or additional insured under any of the Debtor's insurance policies, or is the secured party under any of the Prepetition RBL Loan Documents, the DIP Agent shall also be deemed to be the secured party under such account control agreements, loss payee or additional insured under the Debtor's insurance policies, and the secured party under each such Prepetition RBL Loan Document, shall have all rights and powers attendant to that position (including rights of enforcement), and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Secured Parties in accordance with the DIP Loan Documents and second, subsequent to Payment in Full of all DIP Obligations, for the benefit of the Prepetition RBL Secured Parties, *provided* that nothing in this Paragraph constitutes a limitation on any obligation to pay a stamp or similar tax pursuant to section 1146(a) of the Bankruptcy Code. The Prepetition RBL Agent shall serve as agent for the DIP Agent for purposes of perfecting the DIP Agent's Liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Final Order, is of a type such that perfection of a Lien therein may be accomplished only by possession or control by a secured party.

34

5.      **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.

The Debtor's Stipulations are binding upon the Debtor and its estate in all circumstances upon

entry of the Interim Order. The Debtor's Stipulations shall be binding upon each party in interest

(other than the Debtor), including the Committee and any chapter 11 trustee (or if the Chapter 11

Case is converted to a case under chapter 7 prior to the expiration of the Challenge Period (defined

below), the chapter 7 trustee in such Successor Case), except to the extent and only to the extent

such party in interest with standing *first,* commences by the earlier of (x) the date a confirmation

order is entered in the Chapter 11 Case, (y) in the case of such adversary proceeding or other

contested matter filed by a party in interest with required standing other than the Committee (if

any) no later than seventy-five (75) days from the date of entry of the Interim Order, or (z) in the

case of an adversary proceeding or other contested matter filed by the Committee (if any), no later

than April 27, 2020 (such time period established by clauses (x), (y) or (z), as the same may be

extended in accordance with this Paragraph 5, shall be referred to as the "***Challenge Period***") and

the date that is the next calendar day after the termination of the Challenge Period in the event that

either (i) no Challenge (defined below) is properly raised during the Challenge Period or (ii) with

respect only to those parties who properly file a Challenge, such Challenge is fully and finally

adjudicated, shall be referred to as the "***Challenge Period Termination Date***") (A) a contested

matter or adversary proceeding challenging or otherwise objecting to the admissions, stipulations,

findings, or releases included in the Debtor's Stipulations, or (B) a contested matter or adversary

proceeding against any or all of the Prepetition RBL Secured Parties in connection with or related

to the Prepetition RBL Obligations or the actions or inactions of any of the Prepetition RBL

Secured Parties arising out of or related to the Prepetition RBL Obligations, including any claim

against any or all of the Prepetition RBL Secured Parties, in the nature of a "lender liability" cause

35

of action, setoff, counterclaim, or defense to the Prepetition RBL Obligations (including those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against any of the Prepetition RBL Secured Parties) (clauses (A) and (B) collectively, the "*Challenges*" and, each individually, a "*Challenge*"), and *second*, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action (any such Challenge timely brought for which such a final and non-appealable order is so obtained, a "*Successful Challenge*"). If a chapter 7 trustee or a chapter 11 trustee is appointed or elected during the Challenge Period, then the Challenge Period Termination Date with respect to such trustee only shall be the later of (i) the last day of the Challenge Period and (ii) the date that is twenty (20) days after the date on which such trustee is appointed or elected. Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in this Chapter 11 Case and any Successor Case (and after the dismissal of this Chapter 11 Case or any Successor Case), (i) all payments made to or for the benefit of the Prepetition RBL Secured Parties pursuant to, or otherwise authorized by, this Final Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery, or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred, (iii) all of the Prepetition RBL Obligations shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code (which claims and Liens shall have been deemed satisfied to the extent the Prepetition RBL Obligations are converted into Roll-Up DIP Obligations as provided herein), and (iv) the Debtor's RBL Stipulations, including the release provisions therein, shall be binding on all parties in interest in this Chapter 11 Case or any Successor Case, including any

36

Committee or chapter 11 or chapter 7 trustee. Notwithstanding the foregoing, to the extent any Challenge is timely asserted, the Debtor's RBL Stipulations, and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee and on any other party in interest from and after the Challenge Period Termination Date, except to the extent that the Debtor's RBL Stipulations, or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such Challenge and such Challenge becomes a Successful Challenge. The Challenge Period may be extended only with the written consent of the Prepetition RBL Agent in its sole discretion, or pursuant to a Court order for good cause shown; *provided, however,* that the Challenge Period shall be tolled, solely with respect to a party in interest that files a motion seeking standing to pursue a Challenge, until the date that this Court rules on any such standing motion; *provided, further,* that such party in interest shall not be authorized to prosecute any such Challenge (including by way of discovery or motion) unless and until this Court shall have granted the motion seeking standing to pursue such Challenge. Notwithstanding any provision to the contrary herein, nothing in this Final Order shall be construed to grant standing on or authority to any party in interest, including any Committee, to pursue or bring any cause of action, including any Challenge, on behalf of the Debtor or its estate. For the avoidance of doubt, as to the Debtor, all Challenges, and any right to assert any Challenge, are hereby irrevocably waived and relinquished as of the Petition Date, and the Debtor's Stipulations shall be binding in all respects on the Debtor irrespective of the filing of any Challenge.

6. **Carve Out**.

(a) Carve Out. As used in this Final Order, the "***Carve Out***" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States

Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all (x) unpaid fees and expenses (the "***Allowed Professional Fees***") incurred by persons or firms retained in the Chapter 11 Case by the Debtor or any Committee pursuant to section 327, 328, 363 or 1103 of the Bankruptcy Code (the "***Professional Persons***") at any time before or on the first business day following delivery by the DIP Agent of a Carve Out Trigger Notice (defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice and (y) out-of-pocket expenses of members of the Committee allowed pursuant to section 503(b)(3)(F) of the Bankruptcy Code, but, for the avoidance of doubt, excluding fees of legal or other advisors of any such members; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,000,000 incurred after the first business day following delivery of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise, <u>plus</u> any restructuring fee, sale fee, transaction fee or other success fee of any investment banker or financial advisor of the Debtor, to the extent earned and allowed at any time, whether by interim order, procedural order, final order, or otherwise (*provided*, *however*, that the Carve Out shall not apply to any restructuring, sale, transaction or success fee for a transaction that such advisor did not assist in structuring and that is allowed and payable solely due to the tail period in such advisor's engagement letter) (the amounts set forth in this clause (iv) being the "***Post-Carve Out Trigger Notice Cap***"). For purposes of the foregoing, "***Carve Out Trigger Notice***" shall mean a written notice delivered by email (or other electronic means) by (x) the DIP Agent (acting at the direction of the Required DIP Lenders)

38

or (y) the Prepetition RBL Agent, solely to the extent the DIP Facility has been Paid in Full, to the Debtor, the Debtor's lead restructuring counsel, lead counsel to the Prepetition RBL Agent, the United States Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the (x) continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, or, (y) if the DIP Facility has been Paid in Full, during the continuation of a Termination Event and the termination of usage of Cash Collateral hereunder, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)     <u>Carve Out Reserves</u>. On the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtor (the "***Termination Declaration Date***"), the Carve Out Trigger Notice shall constitute a demand to the Debtor to utilize all cash on hand as of such date and any available cash thereafter held by the Debtor to fund a reserve in an amount equal to (a) the maximum amount provided for in Paragraph 6(a)(i) and 6(a)(ii) above; plus (b) the then unpaid amounts (including the good-faith estimate of Professional Fees accrued and not yet invoiced) of the Allowed Professional Fees, as provided for in Paragraph 6(a)(iii) of the Carve Out. The Debtor shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "***Pre-Carve Out Trigger Notice Reserve***") prior to any and all other claims to the fullest extent allowable under the Bankruptcy Code and applicable non-bankruptcy law. On the Termination Declaration Date, the Debtor shall also deposit and hold an amount equal to the Post-Carve Out Trigger Notice Cap in a segregated account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "***Post-Carve Out Trigger Notice Reserve***" and, together with the Pre-Carve Out Trigger Notice Reserve, the "***Carve Out Reserves***") prior to any and all other claims. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through

39

(iii) of the definition of Carve Out set forth above (the "***Pre-Carve Out Amounts***") until Paid in Full and then any remaining funds shall be distributed to the DIP Agent on behalf of the DIP Secured Parties.

(c)     All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "***Post-Carve Out Amounts***"), and then any remaining funds shall be distributed to the DIP Agent on behalf of the DIP Secured Parties. Notwithstanding anything to the contrary in the DIP Loan Documents or this Final Order, if either of the Carve Out Reserves are not funded in full in the amounts set forth in Paragraph 6(b), then any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in Paragraph 6(b), prior to making any payments to the DIP Agent. Notwithstanding anything to the contrary in the DIP Loan Documents, the Interim Order, or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent, the other DIP Secured Parties, the Prepetition RBL Agent, and the other Prepetition RBL Secured Parties, shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtor until the Carve Out Reserves have been fully funded, but the DIP Agent shall have a security interest in any residual interest in the Carve Out Reserves. Further, notwithstanding anything to the contrary in this Final Order, (i) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (ii) in no way shall the Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtor.

40

(d)    Upon consummation of a sale of the Debtor's assets that either (i) is consented to by the Required DIP Lenders and the required Prepetition RBL Lenders, or (ii) gives rise to the repayment in full in cash of the DIP Facility (either through application of proceeds of the sale  or  otherwise), an amount equal to all accrued and unpaid Allowed Professional Fees of Professional Persons as described in Paragraph 6(a)(iii) above and including any "success," "transaction" or similar fees payable upon consummation of such sale, shall be escrowed from the proceeds of such sale and used to pay the obligations in Paragraph 6(a)(iii).

(e)    For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP Credit Agreement or the Prepetition RBL Credit Agreement, the Carve Out shall be senior to the DIP Liens, the DIP Superpriority Claims, the Prepetition RBL Adequate Protection Liens and the Prepetition RBL Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition RBL Obligations.  Notwithstanding anything herein, but subject to Paragraphs 5 and 14, no proceeds of DIP Collateral, Prepetition Collateral, Cash Collateral, the DIP Loans, or the Carve Out shall be used for the purpose of: (a) investigating, objecting to, challenging, or contesting in any manner, or in raising any defense to, the amount, validity, extent, perfection, priority, enforceability, or avoidability of the Prepetition RBL Obligations, the Prepetition RBL Liens, or any liens or security interests with respect thereto, or any other rights or interests of any of the Prepetition RBL Secured Parties, whether in their capacity as such or otherwise, including with respect to the Prepetition RBL Adequate Protection Liens, or in asserting any claims or causes of action against any of the Prepetition RBL Secured Parties (whether in their capacity as such or otherwise), including, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law, or otherwise.

41

(f)     <u>Payment of Allowed Professional Fees Prior to Termination Declaration Date</u>. Prior to the occurrence of the Termination Declaration Date, the Debtor shall be permitted to pay allowed fees and expenses of the Professional Persons, subject to this Final Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any interim compensation procedures order entered by this Court.

(g)     <u>No Direct Obligation to Pay Allowed Professional Fees; No Waiver of Right to Object to Fees</u>. The DIP Agent, the DIP Lenders, and the Prepetition RBL Secured Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Case or any Successor Case under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall (i) be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition RBL Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement or (ii) require any DIP Lender to make DIP Loans following the occurrence and during the continuation of an Event of Default under the DIP Facility or in excess of its commitments under the DIP Facility. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of the Debtor, any Committee, any other official or unofficial committee in this Chapter 11 Case or any Successor Case or of any other person or entity, or shall affect the right of the DIP Agent, the DIP Lenders, or the Prepetition RBL Secured Parties to object to the allowance and payment of any such fees and expenses.

(h)     <u>Payment of Allowed Professional Fees Prior to Termination Declaration Date</u>. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

42

(i)      <u>Payment of Carve Out On or After Termination Declaration Date</u>. Any payment or reimbursement from the Carve Out Reserves made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out described in Paragraph 6(a)(iii)-(iv) of this Final Order on a dollar-for- dollar basis.

7.      **Waiver of 506(c) Claims**. As a further condition of (i) the DIP Facility and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Loan Documents (and the consent of the DIP Secured Parties and the Prepetition RBL Secured Parties to the payment of the Carve Out to the extent provided herein) and (ii) the Debtor's use of Cash Collateral pursuant to this Final Order, (a) no costs or expenses of administration of the Chapter 11 Case or any Successor Case shall be charged against or recovered from or against any or all of the DIP Secured Parties and/or the Prepetition RBL Secured Parties, the Prepetition RBL Collateral, the DIP Collateral, and the Cash Collateral, in each case pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Agent (acting at the direction of the Required DIP Lenders) and the Prepetition RBL Agent (with respect to Prepetition RBL Collateral), and (b) no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the DIP Secured Parties or the Prepetition RBL Secured Parties.

8.      **After-Acquired Property**. Except as otherwise expressly provided in this Final Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtor on or after the Petition Date is not, and shall not be, subject to any Lien of any person or entity resulting from any security agreement entered into by the Debtor prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtor that is subject to a

43

valid, enforceable, perfected, and unavoidable Lien as of the Petition Date (or a valid, enforceable, and unavoidable Lien that is perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code) that is not subject to subordination or avoidance under the Bankruptcy Code or other provisions or principles of applicable law.

9. **Reserved**.

10. **Proceeds of Subsequent Financing**. Without limiting the provisions and protections of the Carve Out, if at any time prior to the Payment in Full of all the DIP Obligations (including subsequent to the confirmation of any chapter 11 plan or plans with respect to the Debtor), the Debtor's estate, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d), or any other provision of the Bankruptcy Code in violation of this Final Order or the DIP Loan Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent for application to the DIP Obligations until Paid in Full.

11. **Disposition of DIP Collateral; Credit Bid**.

(a) Except to the extent otherwise expressly provided in the DIP Loan Documents, all proceeds from the sale, transfer, lease, encumbrance, or other disposition of any DIP Collateral (other than the sale of crude oil, natural gas, natural gas liquids, or other hydrocarbons in the ordinary course of business) shall, subject to Paragraphs 5 and 6, be remitted to the DIP Agent for application to the DIP Obligations, in each case, in accordance with the terms of this Final Order and the DIP Loan Documents. In addition, the Debtor is authorized and directed to enter into such blocked account agreements (with cash dominion, if the DIP Agent so elects) with the DIP Agent and such financial institutions as the DIP Agent may require, and, if it so

44

elects, the DIP Agent shall be entitled to enjoy the benefit of all control agreements to which the Prepetition RBL Agent is a party without the need to enter into new blocked account agreements.

(b)     Pursuant to section 363(k) of the Bankruptcy Code, unless the Court orders otherwise for cause, (i) the DIP Agent (or one or more of its designees, affiliates, or assignees) shall have the unqualified right to credit bid up to the full amount of any DIP Obligations in any sale of the DIP Collateral (or any DIP Collateral subject to any Prepetition RBL Adequate Protection Liens) under or pursuant to (A) section 363 of the Bankruptcy Code, (B) any plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code to the extent any sale contemplated thereunder does not result in Payment in Full of all of the DIP Obligations on the effective date of such plan, or (C) section 725 of the Bankruptcy Code, and (ii) subject to Paragraph 5 of this Final Order, the Prepetition RBL Agent (or one or more of its designees, affiliates, or assignees) shall have the right to credit bid up to the full amount of any Prepetition RBL Obligations in any sale of the Prepetition RBL Collateral (or any DIP Collateral subject to any Prepetition RBL Adequate Protection Liens) under or pursuant to (A) section 363 of the Bankruptcy Code, (B) any plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code to the extent any sale contemplated thereunder does not result in Payment in Full of all of the Prepetition RBL Obligations on the effective date of such plan, or (C) section 725 of the Bankruptcy Code, in each case so long as all DIP Obligations are immediately Paid in Full in cash upon consummation of such credit bid.  If the DIP Agent, the Prepetition RBL Agent, or their respective designees, affiliates, or assignees make a credit bid in connection with any auction or other sale process relating to the sale or other disposition of any DIP Collateral or Prepetition RBL Collateral, then for purposes of such auction or sale process or any applicable order of this Court, the DIP Agent or Prepetition RBL Agent shall be automatically deemed to be a qualified bidder

and its bid shall be automatically deemed to constitute a qualified bid, regardless of whether the qualified bidder or qualified bid requirements are satisfied.

       12.   **Termination Events**. The following shall constitute a termination event under this Final Order and the DIP Loan Documents unless waived in writing by each of the DIP Agent (acting at the direction of the Required DIP Lenders) and the Prepetition RBL Agent (each, a "***Termination Event***"):

       (a)     Prior to the Payment in Full of the DIP Obligations, the occurrence of an "Event of Default" under the DIP Credit Agreement, as set forth therein.

       (b)     Following the Payment in Full of the DIP Obligations, the occurrence of one of the following "Events of Default" set forth in the DIP Credit Agreement; *provided* that following the Payment in Full of the DIP Obligations, any reference to Administrative Agent in such Events of Default shall refer to the Prepetition RBL Agent, any reference to the Lenders or Majority Lenders therein shall refer to the Prepetition RBL Lenders or a majority of the Prepetition RBL Lenders, as applicable, and any reference to DIP Collateral shall refer to the Prepetition RBL Collateral (or the DIP Collateral solely to the extent encumbered by Prepetition RBL Adequate Protection Liens):

          (i)    Section 7.01(c) of the DIP Credit Agreement with respect to the failure to perform or observe a covenant or condition or agreement contained in Section 5.02(a) or (c), Section 5.05, Section 5.06 (other than 5.06(d), (f), (i), (j) (k) and (p)), Section 5.08, Section 5.15, Section 5.21, Section 5.23, Section 5.24; and

          (ii)   Sections 7.01(l), (m), (n), (o), (p) and (q) of the DIP Credit Agreement.

       (c)     Any other breach, default, or other violation by the Debtor of the terms and provisions of this Final Order, which breach, default or violation (other than any payment default,

to which no grace period shall apply) is not cured within five (5) Business Days of the Debtor having given notice of the occurrence thereof.

13.     **Rights and Remedies Upon Termination Event**.

(a)     Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified, subject to Paragraph (b) below and the Carve Out, to the extent necessary to permit the DIP Secured Parties to exercise immediately upon the occurrence and during the continuance of any Termination Event, all rights and remedies under this Final Order, the DIP Loan Documents, and/or applicable non-bankruptcy law (other than those rights and remedies against the DIP Collateral and with respect to the Debtor's use of Cash Collateral in accordance with an Approved Budget during the five (5) Business Days after the Termination Declaration Date, each as provided in Paragraph 13(b) below), including the right to (A) declare all DIP Obligations to be immediately due and payable, (B) declare the termination, reduction, or restriction of any further commitment to extend credit to the Debtor, to the extent any such commitment remains, and/or (C) terminate the DIP Facility and any other DIP Loan Documents as to any future liability or obligation of the DIP Agent and the other DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; and/or (D) declare a termination, reduction, or restriction on the ability of the Debtor to use any Cash Collateral (any such declaration under any of clauses 13(a)(i)(A)-(D) shall be made to the respective lead counsel to the Debtor, the Committee, and the United States Trustee, and shall be referred to herein as a "***Termination Declaration***" and the date that is the earliest to occur of any such Termination Declaration being herein referred to as the "***Termination Declaration Date***").

(b)     Subject to the Carve Out, in addition to the rights and remedies described above, five (5) Business Days following the Termination Declaration Date, unless (i) otherwise

47

ordered by the Court or (ii) prior to such time this Court determines that a Termination Event has not occurred and/or is not continuing, the DIP Agent is hereby granted relief from the automatic stay, without further notice, hearing, motion, order, or other action of any kind, to foreclose on, or otherwise enforce and realize on, its DIP Liens on all or any portion of the DIP Collateral, including by collecting accounts receivable and applying the proceeds thereof to the DIP Obligations. Solely during the five (5) Business Day period after a Termination Declaration Date, the Debtor, any Committee and any other party in interest shall be entitled to an emergency hearing before this Court and section 105 of the Bankruptcy Code may not be invoked by the Debtor in an effort to restrict or preclude any DIP Secured Party from exercising any rights or remedies set forth in this Final Order or the DIP Loan Documents.  During such five (5) Business Day period, the Debtor may use Cash Collateral, but such usage may only be in accordance with the Approved Budget or to fund the Carve Out Reserves from Cash Collateral.

(c)     In the event that the DIP Obligations have been Paid in Full, upon the occurrence and during the continuance of any Termination Event, the Prepetition RBL Agent may declare a termination, reduction, or restriction on the ability of the Debtor to use Cash Collateral, subject to the obligation to fund the Carve Out Reserves from Cash Collateral (any such declaration shall be made to the respective lead counsel to the Debtor, the Committee, and the United States Trustee, and shall be referred to herein as a "***RBL Termination Declaration***" and the date that is the earliest to occur of any such Termination Declaration being herein referred to as the "***RBL Termination Declaration Date***").

(d)     Subject to the Carve Out, in the event that the DIP Obligations have been Paid in Full, five (5) Business Days following the RBL Termination Declaration Date, unless (i) otherwise ordered by the Court or (ii) prior to such time this Court determines that a

48

Termination Event has not occurred and/or is not continuing, the Prepetition RBL Agent is hereby granted relief from the automatic stay, without further notice, hearing, motion, order, or other action of any kind, to foreclose on, or otherwise enforce and realize on, its Prepetition RBL Liens on all or any portion of the Prepetition RBL Collateral, including by collecting accounts receivable and applying the proceeds thereof to the Prepetition RBL Obligations. Solely during the five (5) Business Day period after an RBL Termination Declaration Date, the Debtor and any Committee or any other party in interest shall be entitled to an emergency hearing before this Court and section 105 of the Bankruptcy Code may not be invoked by the Debtor in an effort to restrict or preclude any Prepetition RBL Secured Party from exercising any rights or remedies set forth in this Final Order or the Prepetition RBL Loan Documents. During such five (5) Business Day period, the Debtor may use Cash Collateral, but such usage may only be in accordance with the Approved Budget or to fund the Carve Out Reserves from Cash Collateral.

(e)     Subject to the Carve Out, upon the effectiveness of any relief from the automatic stay with respect to the DIP Facility pursuant to Paragraph 13(b) hereof, the Prepetition RBL Agent shall have relief from the automatic stay to the same extent as the DIP Agent, and without further notice, hearing, motion, order, or other action of any kind, to foreclose on, or otherwise enforce and realize on its Prepetition First Priority Liens and the Prepetition RBL Adequate Protection Liens on, all or any portion of the DIP Collateral or Prepetition RBL Collateral (including by collecting accounts receivable and applying the proceeds thereof to the Prepetition RBL Obligations) or otherwise exercise remedies against the DIP Collateral or Prepetition RBL Collateral permitted by this Final Order, the Prepetition RBL Loan Documents, and/or applicable non-bankruptcy law; *provided*, *however*, that any such foreclosure or other enforcement by the Prepetition RBL Agent of any Prepetition RBL Liens or any Prepetition RBL

Adequate Protection Liens or any other such exercise of remedies by the Prepetition RBL Agent against the DIP Collateral or Prepetition RBL Collateral shall not interfere with or otherwise be inconsistent with any foreclosure or other enforcement by the DIP Agent of any DIP Liens or other DIP Protections or any other exercise of remedies by the DIP Agent, and any proceeds received by the Prepetition RBL Agent in connection with such foreclosure, enforcement, or other exercise of remedies shall be turned over to the DIP Agent for application to the DIP Obligations until the DIP Obligations are Paid in Full.

(f)     Subject to the provisions of Paragraph 5 hereof, and subject to the Carve Out, all proceeds realized in connection with the exercise of the rights and remedies of the DIP Secured Parties or the Prepetition RBL Secured Parties shall be turned over *first* to the DIP Agent for application to the DIP Obligations under, and in accordance with the provisions of, the DIP Loan Documents and this Final Order until Payment in Full of all of the DIP Obligations, *then* to the Prepetition RBL Agent for application to the Prepetition RBL Obligations under, and in accordance with the provisions of, the Prepetition RBL Loan Documents and this Final Order until Payment in Full of the Prepetition RBL Obligations.

(g)     The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of this Final Order and the DIP Loan Documents as necessary to (i) permit the Debtor to grant the Prepetition RBL Adequate Protection Liens and the DIP Liens and to incur all liabilities and obligations to the DIP Secured Parties and the Prepetition RBL Secured Parties under the DIP Loan Documents, the DIP Facility, and this Final Order, (ii) authorize the DIP Secured Parties and the Prepetition RBL Secured Parties, to retain and apply payments made in accordance with the DIP Loan Documents, the Prepetition RBL Loan Documents, the Interim Order and/or this Final Order, (iii) to permit each of the DIP Agent, the

other DIP Secured Parties, the Prepetition RBL Agent, and the other Prepetition RBL Secured Parties, to perform any act authorized under the Interim Order, this Final Order and the DIP Loan Documents, and (iv) otherwise to the extent necessary to implement and effectuate the provisions of this Final Order and the DIP Loan Documents.

14.     **Restriction on Use of Proceeds**. Notwithstanding any other provision of this Final Order or any other order entered by this Court, no DIP Loans, DIP Collateral, Cash Collateral or any portion of the Carve Out, may be used directly or indirectly by any Debtor, any official committee appointed in the Chapter 11 Case, or any trustee appointed in the Chapter 11 Case or any successor case, including any chapter 7 case, or any other person, party or entity (i) in connection with the investigation, initiation or prosecution of any claims, counterclaims, causes of action, contested matters, adversary proceedings or other litigation (including joining or supporting any of the foregoing) (a) against any of the DIP Agent, the DIP Lenders, or the Prepetition RBL Secured Parties or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, in each case in such capacities, or any action purporting to do the foregoing in respect of the Prepetition RBL Revolving Loans, Prepetition RBL Obligations, Prepetition RBL Liens, DIP Obligations, DIP Liens, DIP Superpriority Claims and/or the Prepetition RBL Adequate Protection, under the Interim Order or this Final Order, as applicable, or (b) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the Prepetition RBL Obligations, the DIP Obligations and/or the liens, claims, rights, or security interests granted under the Interim Order, this Final Order, the DIP Loan Documents, or the Prepetition RBL Loan Documents, including, in each case, without limitation, pursuing any claims or causes of action for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise;

*provided*, *however*, advisors to the Committee, if any, may investigate any potential challenges with respect to the Prepetition RBL Loan Documents, the Prepetition RBL Obligations, and the Prepetition RBL Liens during the Challenge Period at an aggregate expense for such investigation, but not litigation, prosecution, objection or challenge thereto, not to exceed $100,000 in the aggregate; (ii) to prevent, hinder, or otherwise delay the Prepetition RBL Secured Parties', the DIP Agent's or the DIP Lenders', as applicable, enforcement or realization of the Prepetition RBL Obligations, the Prepetition RBL Collateral, the DIP Obligations, the DIP Collateral, and the liens, claims, and rights granted to such parties under this Final Order, each in accordance with the DIP Loan Documents, the Prepetition RBL Loan Documents or this Final Order; (iii) to seek to modify any of the rights and remedies granted to the Prepetition RBL Secured Parties, the DIP Agent or the DIP Lenders under this Final Order, the Prepetition Credit Documents, or the DIP Documents, as applicable (other than in connection with an approved chapter 11 plan); (iv) to apply to the Court for authority to approve superpriority claims or grant liens or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, the DIP Superpriority Claims, the Prepetition RBL Adequate Protection Liens, or the Prepetition RBL Adequate Protection Superpriority Claims, as applicable, unless all DIP Obligations, Prepetition RBL Obligations, obligations in connection with the Prepetition RBL Adequate Protection, and claims granted to the DIP Agent, the DIP Lenders, or the Prepetition RBL Secured Parties under this Final Order, have been refinanced or paid in full in cash or otherwise agreed to in writing by the DIP Required Lenders (as defined in the DIP Credit Agreement); or (v) to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the DIP Required Lenders (as defined in the DIP Credit Agreement) or are otherwise included in the Approved Budget. Following Payment in Full of the DIP Obligations,

nothing in this Paragraph shall be deemed to (a) limit the ability of the Committee's professionals to seek payment from unencumbered assets for services rendered in the investigation or prosecution of claims against the Prepetition RBL Secured Parties; (b) preclude the Court from awarding fees and expenses to the Committee professionals pursuant to section 330 of the Bankruptcy Code for such services rendered, nor (c) relieve the Debtor or any plan proponent(s) from paying all allowed administrative expenses on account of such fees and expenses in connection with confirmation of any plan in this Chapter 11 Case.  For the avoidance of doubt, the allowed fees and expenses incurred by the Committee with respect to its review of, and objection to, the Motion, any motion to approve a sale of the Debtor's assets or procedures governing such sale, any proposed plan of reorganization or disclosure statement or an alleged Termination Event shall not be subject to the restrictions on use of proceeds set forth in this Paragraph 14.

15.    **Proofs of Claim**. The Prepetition RBL Secured Parties will not be required to file proofs of claim in the Chapter 11 Case or any Successor Case for any claim allowed herein. The Debtor's RBL Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition RBL Secured Parties in respect of all Prepetition RBL Obligations. In addition, the Prepetition RBL Secured Parties and the DIP Secured Parties will not be required to file any request for allowance and/or payment of any administrative expenses, and this Final Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition RBL Obligations constituting administrative expenses or any DIP Obligations, as applicable. Notwithstanding any order entered by this Court in relation to the establishment of a bar date in the Chapter 11 Case or any Successor Case to the contrary, each of the Prepetition RBL Agent, for the benefit of itself and the other Prepetition RBL Secured Parties, and the DIP Agent, for the benefit of itself and the other DIP Secured Parties, is hereby authorized and entitled, in its sole

discretion, but not required, to file (and amend and/or supplement, in its discretion) in the Chapter 11 Case or a Successor Case (i) in the case of the Prepetition RBL Agent, a proof of claim and/or aggregate proofs of claim in respect of any Prepetition RBL Obligations, and (ii) in the case of each of the Prepetition RBL Agent and the DIP Agent, a request or aggregate requests for allowance and/or payment of any portion of the Prepetition RBL Obligations constituting administrative expenses or any DIP Obligations, as applicable.

16. **Preservation of Rights Granted Under the Final Order**.

(a)     No Non-Consensual Modification or Extension of Final Order. In the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, such modification, amendment, or vacatur shall not affect the validity, perfection, priority, allowability, enforceability, or non-avoidability of any advances, payments, or use of cash authorized or made hereby or pursuant to the DIP Loan Documents, or Lien, claim, priority, or other DIP Protections authorized or created hereby or pursuant to the DIP Loan Documents, except to the extent such advances, payments, or use of cash, or Lien, claim, priority, or other DIP Protections are stayed pending appeal. Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, vacated, or stayed by a subsequent order of this Court or any other court, the DIP Secured Parties and the Prepetition RBL Secured Parties shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and notwithstanding any such reversal, modification, vacatur, or stay, any use of Cash Collateral or any DIP Obligations or any DIP Protections (including the Prepetition RBL Adequate Protection) incurred or granted by the Debtor prior to the actual receipt of written notice by the DIP Agent, or the Prepetition RBL

Agent of the effective date of such reversal, modification, vacatur, or stay shall remain in full force and effect and be binding on all parties in interest and be governed in all respects by the original provisions of this Final Order (and shall maintain their respective priorities as provided by this Final Order), and the DIP Secured Parties and the Prepetition RBL Secured Parties shall be entitled to all of the DIP Protections (including the Prepetition RBL Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted pursuant to section 364(e) of the Bankruptcy Code, this Final Order, or the DIP Loan Documents, except to the extent such use of Cash Collateral or incurrence or granting of any DIP Obligations or DIP Protections, as applicable, are stayed pending appeal.

(b)     Dismissal. Subject to Paragraph 5 of this Final Order, if any order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, then notwithstanding any such dismissal, (i) the DIP Protections (including the Prepetition RBL Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition RBL Secured Parties, respectively, shall remain in full force and effect and be binding on all parties in interest and be governed in all respects by the provisions of this Final Order (and shall maintain their respective priorities as provided by this Final Order) until all DIP Obligations and all Prepetition RBL Obligations have been Paid in Full, and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections (including the Prepetition RBL Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition RBL Secured Parties, respectively.

(c)     <u>Survival of Final Order</u>. Subject to Paragraph 5 of this Final Order, the provisions of this Final Order and the DIP Loan Documents, any actions taken pursuant hereto or thereto, and all of the DIP Protections (including the Prepetition RBL Adequate Protection), and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition RBL Secured Parties, respectively, shall survive, and shall not be modified, impaired, or discharged by, the entry of any order confirming any plan of reorganization in the Chapter 11 Case or any Successor Case, converting the Chapter 11 Case to a case under chapter 7, dismissing the Chapter 11 Case, withdrawing of the reference of the Chapter 11 Case or any Successor Case or providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Case or any Successor Case in this Court, or by any other act or omission. The terms and provisions of this Final Order, including all of the DIP Protections (including the Prepetition RBL Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition RBL Secured Parties, respectively, shall continue in full force and effect and be binding on all parties in interest notwithstanding the entry of any such order, and such DIP Protections (including the Prepetition RBL Adequate Protection), and such other rights, remedies, Liens, priorities, privileges, protections, and benefits, shall continue in full force and effect in these proceedings and in any Successor Case and after dismissal of any thereof, and shall maintain their respective priorities as provided by this Final Order.

17.     **Insurance Policies**. The DIP Agent and the other DIP Secured Parties shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees, as applicable, on each insurance policy maintained by the Debtor that in any way relates to the DIP Collateral.  The Prepetition RBL Agent, or the other Prepetition RBL Secured Parties

shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees, as applicable, on each insurance policy maintained by the Debtor that in any way relates to the Prepetition RBL Collateral. The Debtor shall take such actions as are reasonably requested by the DIP Agent or the Prepetition RBL Agent from time to time to evidence or effectuate the foregoing.

18. **Prepetition Hedge Contracts**.   As additional adequate protection for the Prepetition RBL Secured Parties, in the event that a Prepetition RBL Secured Party is a counterparty with the Debtor to a Hedge Contract (as defined in the Prepetition RBL Credit Agreement) and a Hedge Termination (as defined in the Prepetition RBL Credit Agreement) occurred prepetition or occurs postpetition which would give rise to such Prepetition RBL Secured Party owing money to the Debtor, any relevant cancellation, novation or termination payment otherwise owed to the Debtor shall instead be remitted to the Prepetition RBL Agent and subsequently applied to pay down the principal amount of the Prepetition RBL Obligations.

19. **Preservation of Prepetition Priorities and Interests**. Nothing in this Final Order is intended to change or otherwise modify the prepetition priorities among secured creditors of the Debtor, including any sureties', operators', or nonoperators' recoupment rights to the extent their rights are valid, enforceable, nonavoidable, and perfected, and nothing in this Final Order shall be deemed to have changed or modified such prepetition priorities, all of which are hereby expressly preserved; *provided*, *however*, that the Debtor, the Committee, the DIP Secured Parties, and all other parties in interest reserve all rights to object to any of the foregoing claims or liens.

20. **Other Rights and Obligations**.

(a)     Expenses. To the extent provided in the DIP Loan Documents (and without limiting the Debtor's respective obligations thereunder), the Debtor will pay all reasonable and

documented expenses incurred by the DIP Agent (including the reasonable fees and disbursements of all counsel for the DIP Agent and any internal or third-party appraisers, consultants, advisors, and auditors engaged by or for the benefit of the DIP Agent and/or its counsel) in connection with the Chapter 11 Case, including the preparation, execution, delivery, and administration of the DIP Loan Documents, the Interim Order, this Final Order, and any other agreements, instruments, pleadings, or other documents prepared or reviewed in connection with any of the foregoing, whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are consummated.

(b)    <u>Notice of Professional Fees</u>. Professionals for the DIP Agent and the Prepetition RBL Agent (collectively, the "***Lender Professionals***") shall not be required to submit invoices to this Court, the United States Trustee, any Committee or any other party in interest. Copies of summary invoices submitted to the Debtor by such Lender Professionals shall be forwarded by the Debtor to the United States Trustee, counsel for any Committee, and such other parties as this Court may direct. The summary invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses; *provided*, *however*, that such summary invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such summary invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or other applicable privilege. If the Debtor, the United States Trustee, or any Committee object to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection within ten (10) days of receipt of such invoices, then the Debtor, the United States Trustee, or the Committee, as the case may be, shall file with this Court and serve on such Lender

Professionals an objection (the "*Fee Objection*") and any failure by any such party to file a Fee Objection within such ten (10) day period shall constitute a waiver of any right of such party to object to the applicable invoice. Notwithstanding any provision herein to the contrary, any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a professional fee invoice in respect of Lender Professionals shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection. The Debtor shall timely pay in accordance with the terms and conditions of this Final Order (a) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed and (b) all fees, costs, and expenses on any invoice to which no Fee Objection has been timely filed. All such unpaid fees, costs, expenses, and charges of the DIP Agent that have not been disallowed by this Court on the basis of an objection filed by the Debtor, the United States Trustee, or the Committee (or any subsequent trustee of the Debtor's estate) in accordance with the terms hereof shall constitute DIP Obligations and shall be secured by the DIP Collateral as specified in this Final Order. Any and all fees, commissions, costs, and expenses paid prior to the Petition Date by the Debtor to the DIP Agent or the other DIP Secured Parties in connection with or with respect to the DIP Facility, the DIP Credit Agreement, or the other DIP Loan Documents are hereby approved in full and non-refundable and shall not otherwise be subject to any Challenge.

(c)    Binding Effect. Subject only to Paragraph 5 above, the provisions of this Final Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in this Chapter 11 Case and any Successor Case, including the DIP Secured Parties, the Prepetition RBL Secured Parties, any Committee, and the Debtor and its estate, successors, and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or

elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary or responsible person appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor), whether in the Chapter 11 Case, in any Successor Case, or upon dismissal of the Chapter 11 Case or Successor Case; *provided*, *however*, that the DIP Secured Parties, and the Prepetition RBL Secured Parties shall have no obligation to permit the use of their Cash Collateral (if any) or any other Prepetition RBL Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estate of the Debtor in the Chapter 11 Case or Successor Case.

(d)     No Waiver. The failure of the Prepetition RBL Secured Parties or the DIP Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the Prepetition RBL Loan Documents, the DIP Loan Documents, or otherwise (or any delay in seeking or exercising same) shall not constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise. Nothing contained in this Final Order (including the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity to any Prepetition RBL Secured Party or any DIP Secured Party, including rights of a party to a swap agreement, securities contract, commodity contract, forward contract, or repurchase agreement with the Debtor to terminate such agreements and/or assert rights of setoff or other rights with respect thereto as permitted by law (or the right of the Debtor to contest such assertion). Except as prohibited by this Final Order, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, any right or ability of the Prepetition RBL Secured Parties, or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of the Chapter 11 Case or any Successor Case to a case under chapter 7, dismissal of the Chapter 11 Case or any Successor

60

Case, or the appointment of a trustee or examiner in the Chapter 11 Case or any Successor Case, or to oppose the use of Cash Collateral in any Successor Case or on terms other than those set forth in this Final Order, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to the Debtor or seek early termination of the Debtor's exclusive rights to propose a plan under the Bankruptcy Code, or (iii) except as expressly provided herein, exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Secured Parties, or the Prepetition RBL Secured Parties, respectively, under the DIP Loan Documents, the Prepetition RBL Loan Documents, the Bankruptcy Code, or otherwise. Except to the extent otherwise expressly provided in this Final Order or by law, neither the commencement of the Chapter 11 Case nor the entry of this Final Order shall limit or otherwise modify the rights and remedies of the Prepetition RBL Secured Parties under the Prepetition RBL Loan Documents or with respect to any non-Debtor entities or their respective assets, whether such rights and remedies arise under the Prepetition RBL Loan Documents, applicable law, or equity.

(e)      <u>No Third Party Rights</u>. Except as explicitly provided for herein or in any DIP Loan Document, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or direct, indirect, or incidental beneficiary. In determining to make any loan (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Loan Documents, the DIP Secured Parties and the Prepetition RBL Secured Parties shall not (i) be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response,

Compensation and Liability Act, as amended, or any similar federal, state or local statute or regulation) or (ii) owe any fiduciary duty to the Debtor, its creditors, shareholders, or estate.

(f)     No Marshaling. Subject to paragraph 22, none of the DIP Secured Parties nor the Prepetition RBL Secured Parties, shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition RBL Collateral, as applicable.

(g)     Amendments. The Debtor and the DIP Agent are authorized and empowered, without further notice and hearing or approval of this Court, to amend, modify, supplement, or waive any provision of the DIP Loan Documents in accordance with the provisions thereof, in each case only to the extent that the Debtor determines, in consultation with the DIP Agent, that such amendment, modification, supplement, or waiver is immaterial; *provided* that the Committee shall receive prompt notice of any such immaterial amendment, modification, supplement, or waiver. Any material amendment, modification, supplement, or waiver shall require further court order. No waiver, modification, or amendment of any of the provisions of the DIP Loan Documents shall be effective unless set forth in writing, signed by or on behalf of the Debtor and the DIP Agent (after having obtained the approval of the requisite DIP Secured Parties under the DIP Credit Agreement) and, except as provided herein, approved by this Court. Notwithstanding the foregoing, no waiver, modification or amendment of any of the provisions of this Final Order or the DIP Loan Documents that would directly and adversely affect the rights or interests of the Prepetition RBL Secured Parties shall be effective unless (i) approved by order of the Court, or (ii) also consented to in writing by the Prepetition RBL Agent on behalf of the Prepetition RBL Secured Parties (after obtaining the approval of the requisite Prepetition RBL Secured Parties under the Prepetition RBL Credit Agreement).

(h)     _Inconsistency_. In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Final Order, the provisions of this Final Order shall govern and control.

(i)     _Enforceability_. This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable _nunc pro tunc_ to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

(j)     _Reservation of Rights_. Nothing in this Final Order shall be deemed to constitute the consent of the DIP Secured Parties or the Prepetition RBL Secured Parties, and each of the foregoing expressly reserve the right to object, to entry of any Order of the Court that provides for the sale or other disposition of all or substantially all of the assets of the Debtor (or any other sale or other disposition of assets of the Debtor outside the ordinary course of business) to any party unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to Pay in Full the DIP Obligations and the Prepetition RBL Obligations, and all of the foregoing are Paid in Full on the closing date of such sale.

(k)     _Headings_. Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Final Order.

21.     **Reservation of Rights**.  Notwithstanding anything to the contrary contained in this Final Order, in the event that there is a timely Successful Challenge, this Court may fashion an appropriate remedy, including, without limitation, unwinding the Roll-Up.

63

22.    **Objecting Lienholders**.

(a)    Notwithstanding anything to the contrary herein, nothing herein shall (x) invalidate any valid, preexisting claims and liens of Nabors Drilling Technologies USA, Inc., Spartan Companies, LLC, Flash Funding, LLC, Halliburton Energy Services, Inc., Basic Energy Services, LP, Covenant Testing Technologies, LLC, Thru Tubing Solutions, Inc., Pioneer Coiled Tubing Services, Key Energy Services, Inc., Gyrodata, Inc., MS Directional, LLC, Stallion Oilfield Services, Ltd., Sooner Pipe L.L.C. MRC Global (US) Inc., Archrock Partners Operating, LLC or Archrock Services LP (collectively, the "***Objecting Lienholders***") encumbering the Debtor's property, including any oil and gas mechanic's or materialman's lien securing a prepetition claim, (y) preclude Objecting Lienholders from asserting that any such lien is a Prepetition Prior Lien and therefore not primed by the DIP Liens or (z) waive any defenses, disputes or other challenges that the Debtor, the DIP Secured Parties, the Prepetition RBL Secured Parties or any other party in interest may have with respect to the alleged rights and claims of the Objecting Lienholders preserved hereby. The Objecting Lienholders shall not have to commence an action within the Challenge Period with respect to the priority of their liens relative to the Prepetition RBL Liens or DIP Liens, and the Objecting Lienholders shall not have to first seek standing to file any action to determine the priority of their liens relative to the Prepetition RBL Liens and DIP Liens.

(b)    Notwithstanding anything to the contrary contained herein, nothing in this Final Order shall modify the priority of any valid, perfected and non-avoidable statutory lien of an Objecting Lienholder, to the extent such Objecting Lienholder holds an allowed secured claim pursuant to section 506(a), in existence on the Petition Date or to the extent perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code ("***Statutory Lien***"),

and each Objecting Lienholder holding such a Statutory Lien, solely to the extent of any diminution in value of such Objecting Lienholder's interest in its collateral, including Cash Collateral, shall be granted (i) postpetition adequate protection replacement liens against all property of the Debtor and the Debtor's estate, now existing or hereafter acquired, and (ii) allowed superpriority adequate protection claims, pursuant to section 507(b) of the Bankruptcy Code (such adequate protection liens and claims the "***Statutory Lien Adequate Protection Liens and Claims***"). The priorities of individual Statutory Lien Adequate Protection Liens and Claims, relative to the priority of Prepetition RBL Adequate Protection Liens, Prepetition RBL Adequate Protection Superpriority Claims and Prepetition Prior Liens shall be the same as the relative priorities of the underlying Statutory Liens, Prepetition RBL Liens, and Prepetition Prior Liens as they existed as of the Petition Date. The Statutory Lien Adequate Protection Liens and Claims shall be subject and subordinate in all instances to the DIP Liens, the DIP Superpriority Claims and the Carve Out.

(c)      Nothing herein shall waive any rights of any Objecting Lienholder to seek the equitable remedy of marshaling with respect to the Prepetition RBL Secured Parties (but not, for the avoidance of doubt, with respect to the DIP Lenders in their capacities as such), with such rights expressly subject to the rights of Prepetition RBL Secured Parties to contest any marshaling rights that may be asserted by any Objecting Lienholder.

23.      **Enterprise Stipulation**. Nothing in this Final Order alters the terms of or modifies the rights granted to the parties under the Order Approving Stipulation Regarding Emergency Motion of Mid-America Pipeline Company, LLC and Seminole Pipeline Company LLC for Adequate Protection or, in the Alternative, for Relief from the Automatic Stay [D.I. 61] (the "***Enterprise Adequate Protection Order***") or the Stipulation Regarding Emergency Motion of Mid-America Pipeline Company, LLC and Seminole Pipeline Company LLC for Adequate

Protection or, in the Alternative, Relief from the Automatic Stay (the "***Enterprise Stipulation***", and together with the Enterprise Adequate Protection Order, the "***Enterprise Stipulation and Order***") approved by the Enterprise Adequate Protection Order.  The exercise of rights by Mid-America Pipeline Company, LLC or Seminole Pipeline Company LLC under the Enterprise Stipulation and Order are not subject to the Challenge Period, including, but not limited to, the right to seek a determination as to the extent and priority of the liens and claims of Mid-America Pipeline Company, LLC or Seminole Pipeline Company LLC.

24.    **Williams Reservation of Rights**.  The *Limited Objection of Wamsutter LLC to Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition RBL Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay (V) Scheduling a Final Hearing and (VI) Granting Related Relief,* [D. I. 93] is resolved as follows: This Final Order is entered without prejudice to Wamsutter LLC's purported dedication interest or similar real property interest in property of the Debtor or of the estate created by or arising under its gas gathering contracts or agreements with the Debtor. Wamsutter LLC is not required to initiate a Challenge during the Challenge Period to preserve such purported rights and interests, which are hereby reserved.

25.    **Reservation of Rights with Respect to the United States of America**. For the avoidance of doubt, notwithstanding anything to the contrary in this Final Order, nothing in this Final Order shall: (a) restrain, limit, or impact the ability of the United States, including the Department of Interior and any sub-agencies, to oversee and monitor operations on federally or tribally leased land; (b) affect, modify, or impair the United States' recoupment or setoff rights, claims, or defenses; or (c) waive or forfeit the United States' constitutional, statutory, or common

law rights and obligations to administer federal and tribal land for the public good and regulate commercial enterprises accordingly.

26.    **Red Cedar Gathering Company**.  This Final Order and the rights granted to the DIP Lenders herein do not alter or impair Red Cedar Gathering Company's rights under the  Firm Gas Gathering, Compression and Treating Agreement dated December 16, 2008, as amended ("***Dedication Agreement***") between Red Cedar and Debtor, as successor to Energen, to the extent that such rights, interests and dedications granted in the Dedication Agreement were valid, enforceable, non-avoidable and perfected as of the Petition Date.

27.    **Southern Ute Indian Tribe**.  Notwithstanding anything herein to the contrary, no assignment, transfer or encumbrance of any interests in contracts, leases, communitization agreements, covenants, operating rights agreements, rights-of-use and easements, and rights-of-way or other interests or agreements with or involving lands or minerals held in trust for the Southern Ute Indian Tribe shall be effective if and to the extent that (a) applicable law requires consent from or approval by the Department of Interior and, as applicable, the Southern Ute Indian Tribe and (b) such consent or approval has not been obtained.

28.    **Retention of Jurisdiction**.  This Court has and will retain jurisdiction to enforce this Final Order according to its terms.

**Dated: February 26th, 2020**
**Wilmington, Delaware**                          KAREN B. OWENS
                                                 UNITED STATES BANKRUPTCY JUDGE